**UNITED STATES of America**

**v.**

**Henry KISSINGER, Appellant.**

**No. 12241.**

United States Court of Appeals
Third Circuit.

Argued Nov. 6, 1957.

Decided Jan. 8, 1958.

Andrew Wilson Green, Harrisburg, Pa., for appellant.

Edwin M. Kosik, Asst. U. S. Atty., Scranton, Pa. (Robert J. Hourigan, U. S. Atty., Scranton, Pa., J. Stephen Doyle, Jr., Atty., Dept. of Justice, Neil Brooks, Atty., U. S. Dept. of Agriculture, Washington, D. C., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the defendant from a judgment rendered against him in the District Court for the Middle District of Pennsylvania in an action brought by the United States for the purpose of collecting civil penalties under the Agricultural Adjustment Act of 1938, as amended.[1] The penalties sued for were alleged to have been incurred by the defendant, who is a farmer, by reason of his having produced on his farm and marketed an amount of wheat in excess of the farm marketing quota imposed upon him under the Act for the 1954 crop of wheat. The defendant does not here dispute that such a quota was imposed upon him in that year or that he produced and marketed an excess of wheat over his quota. His defense is that the Act is unconstitutional in that having failed of its aim in regard to wheat its enforcement violates the Due Process Clause of the Fifth Amendment and in that as applied to him it interferes with his exercise of a religious duty and, therefore, violates the First Amendment.

The United States urges that the defendant is precluded from asserting these defenses in this case because he failed to exhaust his administrative remedies in that he did not apply to have his farm marketing quota reviewed by the local review committee set up under the Act.[2] We cannot agree with the Government's contention in this regard. We do not think that Congress, by stipulating in the Act for the review of a farm marketing quota by a review committee, can prevent an aggrieved farmer from raising the question of the Act's constitutionality for the first time in the district court as a defense to an action for penalties under the Act. For the question of

---

1.  7 U.S.C.A. § 1281 et seq.

2.  7 U.S.C.A. § 1363.

the constitutionality of the Act is quite a different question from whether the farmer's quota is proper and it is a question with which a committee set up under the Act is not competent to deal since its sole authority is derived from the Act and disappears if the Act is unconstitutional. See Davis, Administrative Remedies Often Need Not Be Exhausted, 19 F.R.D. 437, 454, and compare Yakus v. United States, 1944, 321 U.S. 414, 64 S. Ct. 660, 88 L.Ed. 834, and Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, with Miller v. United States, 6 Cir. 1957, 242 F.2d 392.

■ Turning then to the defendant's constitutional contentions we find them to be wholly without merit. The constitutionality of the Agricultural Adjustment Act as a valid exercise of congressional power under the Commerce Clause of the Constitution has been settled beyond peradventure of doubt. Mulford v. Smith, 1939, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122; Secretary of Agriculture v. Central Roig Refining Co., 1950, 338 U.S. 604, 70 S.Ct. 403, 94 L.Ed. 381. The defendant nonetheless asserts that even though the Act has been upheld as a valid exercise of congressional power he should have been permitted by the district court to show by evidence that it has failed to achieve its objectives with respect to wheat. We do not agree. Once the question of constitutional power is answered in the affirmative the wisdom, need and effectiveness of a particular statute enacted in the exercise of that power is a question for the Congress not the courts. State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 1941, 313 U.S. 508, 527, 61 S.Ct. 1050, 85 L.Ed. 1487; Wickard v. Filburn, 1942, 317 U.S. 111, 129, 63 S.Ct. 82. Thus it has been held that whether a particular statutory enactment under the Commerce Clause is reasonably necessary is not for the courts to determine. State of Arizona v. State of California, 1931, 283 U.S. 423, 456, 51 S.Ct. 522, 75 L.Ed. 1154. They do not have power to inquire into either the degree of the necessity for such legislation or its wisdom or effectiveness. Everard's Breweries v. Day, 1924, 265 U.S. 545, 559, 44 S.Ct. 628, 68 L.Ed. 1174.

■ The defendant's contention under the First Amendment is equally without merit. His contention is that since by reason of his religious training and belief he considers it morally wrong and contrary to the teachings of the Holy Scriptures to limit the production of his farm so that it produces any lesser amount of food than it is capable of producing, subject to the knowledge and judgment of farming which God has given him, it is a violation of his constitutional right of religious freedom to restrain him from obtaining such maximum production.

There are two answers to defendant's contention in this regard. The first is that the penalties under the Act were not imposed upon him because he produced the excess wheat but only because he marketed it. For the Act expressly provides that the Secretary of Agriculture shall issue regulations under which the farm marketing excess for a farm may be stored or delivered to him for relief purposes and only upon failure to thus store or deliver to the Secretary the farm marketing excess within the time fixed by such regulations is the producer required to pay the penalties thereon.[3] It thus appears that the de-

---

3. "(3) The farm marketing excess for wheat shall be regarded as available for marketing, and the penalty and the storage amount or amounts to be delivered to the Secretary of the commodity shall be computed upon the normal production of the excess acreage. Where, upon the application of the producer for an adjustment of penalty or of storage, it is shown to the satisfaction of the Secretary that the actual production of the excess acreage is less than the normal production thereof, the difference between the amount of the penalty or storage as computed upon the basis of normal production and as computed upon the

fendant was perfectly free to produce all the wheat which his land was capable of producing and if he had stored or delivered to the Secretary of Agriculture the excess over his quota he would not have been subject to any penalty whatever. It will thus be seen that it was not the production of the wheat, which the defendant's conscience requires of him, but the sale of it in the channels of commerce instead of its storage or delivery for relief purposes which brought about the imposition of the penalties for which the present suit was brought.

██ The second answer to defendant's contention under the First Amendment is that the freedom of religion guaranteed by the First Amendment does not include freedom from all regulation of an individual's acts and conduct as contradistinguished from his beliefs. On the contrary, the enforcement of a reasonable nondiscriminatory regulation of conduct by governmental authority to preserve peace, tranquility and a sound economic order does not violate the First Amendment merely because it may inhibit conduct on the part of individuals which is sincerely claimed by them to be religiously motivated. Davis v. Beason, 1890, 133 U.S. 333, 342–345, 10 S.Ct. 299, 33 L.Ed. 637; Prince v. Commonwealth of Massachusetts, 1944, 321 U.S. 158, 163–171, 64 S.Ct. 438, 88 L.Ed. 645; Poulos v. State of New Hampshire, 1953, 345 U.S. 395, 405, 73 S.Ct. 760, 97 L.Ed. 1105; Mitchell v. Pilgrim Holiness Church Corp., 7 Cir. 1954, 210 F.2d 879, 884–885, certiorari denied 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136.

The judgment of the district court will be affirmed.

basis of actual production shall be returned to or allowed the producer. The Secretary shall issue regulations under which the farm marketing excess of the commodity for the farm may be stored or delivered to him. Upon failure to store or deliver to the Secretary the farm marketing excess within such time as may be determined under regulations prescribed by the Secretary, the penalty computed as aforesaid shall be paid by the producer. Any wheat delivered to the Secretary hereunder shall become the property of the United States and shall be disposed of by the Secretary for relief purposes in the United States or in foreign countries or in such other manner as he shall determine will divert it from the normal channels of trade and commerce." 7 U.S.C.A. § 1340(3).